**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**TONY CHILDS**                                                                                         **PLAINTIFF**

**VERSUS**                                                              **CIVIL ACTION NO. 2:08CV77-P-A**

**ENTERGY MISSISSIPPI, INC., AND
ENTERGY CORPORATION**                                                              **DEFENDANT**

**ORDER**

This cause is before the Court on defendant Entergy Mississippi, Inc.'s Motion to Exclude the Testimony of Mr. Billy Seward [116]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

This lawsuit arose from an accident that occurred on May 6, 2005 during construction of a new gymnasium at Horn Lake Elementary School in Horn Lake, Mississippi. On the date in question, Tony Childs, an employee of Shipp Masonry, climbed to the top of an eighteen foot work scaffold to assist a lift operator in raising boards to the top level of the scaffold. While standing on the platform, Childs kicked aside an insulated wire[1] with his foot and grabbed an uninsulated wire[2] with his left hand and raised it up to give the lift operator unobstructed access to the top of the scaffold. Childs reached down simultaneously to move the boards onto the scaffold with his right

---

[1] Plaintiff described the insulated wire as a telephone wire.

[2] Plaintiff testified he believed the uninsulated wire was merely a cable or a guy wire. It was suspended approximately three feet above the floor of the scaffold upon which plaintiff was standing.

hand when he sustained a severe electrical shock. He fell from the scaffold to the ground.[3] Childs suffered injuries as a result of both the electrocution and the fall.

Entergy Mississippi challenges the admissibility of the testimony of plaintiff's liability expert, Billy Seward, pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Phamaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993). Defendant asserts Seward lacks the qualifications to testify as to: 1) the standard of care applicable to Entergy Mississippi; 2) any alleged violation of the standard of care by Entergy Mississippi; and 3) whether Entergy Mississippi violated applicable OSHA regulations. In addition to attacking Seward's qualifications, Entergy Mississippi Company also asserts plaintiff cannot offer sufficient indicia of relevance and reliability to warrant the admission of Seward's testimony at trial. Child's response maintains that Seward's extensive experience as a commercial and industrial electrician are sufficient to demonstrate his qualifications to provide expert testimony in the instant case. He likewise asserts the opinions proffered by Seward are both relevant and reliable and, consequently, admissible.

Rule 702 controls the admission of expert testimony in any given case. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702.

Simply put, FRE 702 is the vehicle by which a party offers evidence based on scientific, technical or other specialized knowledge through the testimony of a qualified expert. The party

---

[3] Childs was not wearing a safety harness at the time of the accident.

advancing the witness' testimony bears the burden of establishing both the expert's qualifications and the admissibility of the subject testimony. Mathis v. Exxon Corp., 302 F.3d 445, 460 (5th Cir. 2002) ("The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test.").

It is the duty of the trial judge to screen a proffered expert's testimony to determine admissibility. F.R.E. 104(a).[4] See also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, 125 L.Ed.2d 469, 113 S. Ct. 2786 (1993).

As a first step, the Court should examine a witness's qualifications to determine whether he or she is, in fact, "qualified as an expert by knowledge, skill, experience, training, or education . . . ." F.R.E. 702. A trial judge should refuse to allow an expert witness to testify if the witness is not qualified to testify in a particular field or on a given subject. St. Martin v. Mobil Exploration & Producing U.S., Inc., 224 F.3d 402, 412 (5th Cir. 2000).

Assuming a witness is sufficiently qualified, the Court must evaluate the proposed testimony. In doing so, the Court seeks to ensure that the expert's testimony is not only relevant, but reliable as well. Watkins v. Telsmith, Inc., 121 F.3d 984, 989 (5th Cir. 1997). The requirement that expert testimony "assist the trier of fact to understand the evidence or determine a fact in issue" captures the relevancy inquiry." "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful." Id. at 591. An expert's testimony is relevant where there is a sufficient relationship between the subject of the proffered testimony and the facts of the case, so that the testimony aids the factfinder in resolving a disputed issue. See Ruff v. Ensign-Bickford

---

[4] "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . ." F.R.E. 104(a).

Indus., 171 F. Supp. 2d 1226, 1236 (D. Utah 2001); Employers Reinsurance Corp. V. Mid-Continent Casualty Co., 202 F. Supp.2d 1212, 1215 (D. Kan. 2002). In determining relevance, the Court considers whether "expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591, 125 L.Ed.2d 469,113 S. Ct. 2786 (1993)(quoting from United States v. Downing, 753 F.2d 1224, 1242 (3rd Cir. 1985)). Furthermore, expert testimony on matters within the common knowledge of the jury does not assist the trier of fact and is thus inadmissible. See Peters v. Fire Star Marine Serv., 898 F.2d 448 (5th Cir. 1990).

Rule 702's reliability component requires consideration of whether the proposed testimony is "supported by appropriate validation–i.e., 'good grounds' based on what is known." Daubert, 509 U.S. at 590. Accordingly, expert testimony is admissible only when "1) the testimony is based on sufficient facts or data; 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case." F.R.E. 702. The inquiry is both fact intensive and flexible. Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150, 143 L.Ed.2d 238, 119 S. Ct. 1167 (1999). See also Daubert, 509 U.S. at 594. The end objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kuhmo, 526 U.S. at 152.

With all the foregoing in mind, the Court shoulders its gate-keeping responsibility.

A.     Seward's Qualifications[5]

The Court first turns to the argument advanced by Entergy Mississippi that Seward lacks the necessary qualifications to testify in this case. Seward's expert disclosure cites his extensive experience in commercial and industrial construction projects, both as a master electrician and as an electrical contractor. He avers his familiarity with

> the minimum safety standards, National Elecrical Safety Code, OSHA and the Defendant's safety rules as they relate to the installation, placement, maintenance and operation of overhead high voltage electrical power lines on a school premises such as Horn Lake Elementary School on May 6, 2005.

Seward's Disclsure at p. 2.

Defendant's challenge to Seward's qualifications details numerous deficiencies in experience which render him unqualified to serve as an expert witness in this case. Seward is not an electrical engineer. He has little or no experience in the design, construction, maintenance or operation of high voltage power lines used by electrical utilities. Seward is an electrician; however, his work experience has been limited to low voltage electrical systems.[6] After careful consideration, the Court concludes Seward is not qualified to render an expert opinion in this case. Granted, his experience as an electrician equips him with knowledge beyond that of the average layman. But that

---

[5] Defendant devoted a portion of its brief to the argument that Seward is not an <u>objective</u> expert, noting his biological relationship as plaintiff's counsel's father. That factor bears more on the witness's credibility than on the admissibility vel non of his testimony.

[6] Plaintiff's response to the instant motion relies on Seward's "prior experience working in the field of line work, working near or around high voltage power lines, equal to and in excess of the 7200 [volts] of electricity at issue in this cause." Plaintiff's Response at p. 3. However, the experience to which plaintiff refers is Seward's work as a groundman for Standard Electric in the 1960's. He helped remove rotten utility poles and replaced them with new poles. Since his limited experience in the 1960's, Seward has not worked on overhead lines with voltages greater than 600 volts, and he has had no training on high voltage overhead since that time.

is not the question before the Court; instead, the Court must determine whether Seward's expertise will "assist the trier of fact to understand the evidence or to determine a fact in issue." F.R.E. 702. In this case, the pertinent issue is whether Entergy Mississippi acted negligently with regard to the placement, maintenance and/or operation of its high voltage utility wires at or near Horn Lake Elementary School. As Seward's deposition testimony unequivocally shows, he has no relevant expertise with high voltage electrical systems. This deficiency renders him unqualified to testify in this case.

    B.    Reliability of Seward's Testimony

Even if Mr. Seward possessed the necessary qualifications to testify as an expert in this matter, his testimony is fundamentally lacking in reliability. Despite the fact that Seward attested to an extensive working knowledge of the applicable safety standards in the industry, he failed to articulate the pertinent standards or their source in his deposition testimony. He unequivocally admitted his ignorance of the National Electrical Safety Code, the set of national standards to which public utilities like Entergy Mississippi adhere. Although Seward referenced an OSHA standard in his deposition, he could not cite a single relevant standard applicable to defendant. His failure in this regard raises serious concerns as to the foundation for his testimony.

Seward's opinions also lack a factual basis. The record reveals that Marvin Verner, and Entergy Mississippi serviceman, deenergized the transformer serving two portable classrooms at Horn Lake Elementary School in February 2005.[7] Seward maintained in his deposition that one of defendant's employees must have reclosed the switch <u>and</u> that the employee in question should have recognized the potential danger given the proximity of the new construction to Entergy Mississippi's

---

[7] Verner observed no evidence of construction activity at that time.

power line. Seward's first premise is without support in the record. Defendant's business records reveal no additional service (or service requests) to the line in question prior to the date of Child's accident.[8] Furthermore, although Marvin Verner acknowledged that only Entergy Mississippi employees are authorized to open and close transformer switches, he also testified to his knowledge that unauthorized persons have been known to do so. Even if the record warranted an inference that an Entergy Mississippi employee reclosed the switch, Seward's second premise is sheer speculation. There is no evidence regarding <u>when</u> the transformer switch was closed. There is likewise no way of knowing whether construction had begun, or if so, how far it had progressed, or what the defendant's serviceman "might" have seen at the time.

Plaintiff failed to meet his burden in establishing the admissibility of Seward's testimony pursuant to F.R.E. 702. Accordingly,

IT IS, THEREFORE, ORDERED AND ADJUDGED that the defendant's Motion to Exclude the Testimony of Mr. Billy Seward [116] is well-taken and should be, and hereby is, GRANTED.

SO ORDERED, this the 13th day of August, 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[8] Photographs taken immediately subsequent to the accident revealed a temporary connection from Horn Lake Elementary School's meter to a temporary pole which serviced an onsite job trailer.